## Prentiss D. Cheney v. Andrew W. Cross.

1. FORMER ADJUDICATION—*Judgment on Promissory Note, Conclusive on Parties in Interest, etc.*—Where a note is prosecuted in the name of one at the instance or for the benefit of another.person, the adjudication resulting from such prosecution will be conclusive as to such other person, not only as to what was determined in the prosecution, but also as to all other matters involved or which could have been raised and determined in it.

Assumpsit, on a promissory note. Trial in the Circuit Court of Jersey County; the Hon. OWEN P. THOMPSON, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant. Heard in this court at the November term, 1898. Affirmed. Opinion filed February 7, 1899.

THOMAS F. FERNS, attorney for appellant.

The $5,600 D'Arcy note is a pledge, deposited by appellant with the appellee to secure the payment of the $5,000 note sued on in plaintiff's declaration, and the pledgee is a trustee for the appellant, who is the owner of the pledge.

A pledge is a bailment of personal property as security for some debt or engagement. 2 Kent's Com. (14th E.), 577; Story on Bailment, Sec. 286, 8th Ed.; Jones on Pledges, Sec. 1 (1883).

Cheney v. Cross.

"A pledgee is trustee for the debtor." Kirkpatrick v. Hawk, 80 Ill. 122.

The pledgee is trustee for the pledgor, first to pay the debt, and second, to pay over the surplus, and he can not so deal with the property as to destroy or even impair its value. 2 Kent's Com. (14th Ed.), 581.

A pledgee of securities held in pledge is a trustee for the owner. Colebrooke on Coll. Securities, Sec. 87 (1883).

The pledgee is a trustee for the pledgor. While the property is in the possession of the pledgee, he should treat it as a trust property, and not deal with it so as to impair or destroy its value or incur the loss of it. Jones on Pledges, Sec. 405 (1883).

It was the duty of appellee to proceed promptly to collect the pledged note at its maturity, and to use reasonable care and diligence in the proceedings to collect same. A pledgee of negotiable paper is bound to use reasonable diligence in the collection of it. If he neglects to enforce payment he is liable for any loss that might have been prevented by proper diligence in proceedings to collect it. Jones on Pledges, Sec. 692 (1883).

Reasonable diligence in enforcing payment is required to preserve the legal validity of the pledge from being impaired, because the pledgee only can do it. Jones on Pledges, Sec. 693 (1883).

The contract of pledge carries an implication that the security shall be made effectual to discharge the obligation. Story on Bailment, Sec. 311 (8th Ed.).

The holder of collateral securities is bound to employ reasonable care, skill and diligence in regard to them to render them as effectual as possible for the purpose intended, and if they are lost by the negligence of the holder, he must account for their value. Girard v. Marr, 46 Penn. St. 507.

A creditor receiving collateral security is bound in enforcing it, to do so with all the care and legal skill necessary to insure a collection of its full value. Negligence or want of such skill amounts to a positive act on the part of

the creditor whereby the value of the collateral has been impaired. Clopton v. Spratt, 52 Miss. 261.

Where a creditor receives collateral security, he is liable for same if lost by his negligence or want of ordinary attention and vigilance on his part. Wood v. Morgan, 5 Sneed (Tenn.), 79.

A creditor who receives negotiable paper as collateral security is liable for neglect in enforcing same. Whitten v. Wright, 34 Mich. 93.

A creditor receiving collateral security is bound to exercise such diligence as a bailee for hire, and is liable for loss arising from his neglect to enforce collection with proper diligence. Hazard v. Wells, 2 Abbott N. C. (N. Y.) 444.

"If a party undertaking to do a thing, does it so ill that the other party suffers an injury thereby, the law will allow the injured party to recover compensation to the extent of the injury." Id., Secs. 171 and 171d. He who undertakes the business of another is responsible, whether he is capable or not. Story on Bailment, Sec. 9, 8th Ed.

A creditor who fails to use ordinary diligence in collecting collaterals is liable for their loss. Douglas v. Mundine, 57 Tex. 347.

A pledgee must use ordinary care and diligence to collect the security; he is liable for loss resulting from neglect. The responsibility is not determined by the strict rules of law applicable to negotiable paper, but rather by the principles of the general law of agency. Roberts v. Thompson, 14 Ohio St. 1.

Where a creditor receives a promissory note as collateral security he is bound to due diligence in the collection of the debt, and if anything is lost by want of it he is to be the loser. Cardin v. Jones, 23 Ga. 175.

A person who receives notes as collateral security for a debt is bound to use due diligence in collecting same, and if they are lost through his negligence he is chargeable with the amount. Barrow v. Rhinelander, 3 Johns. Chy. 615.

A pledgee makes the pledge his own by his *laches*. Dayton v. Trull, 23 Wend. 345.

Where diligence is a duty, it is negligence to omit such duty. It is negligence on the part of a pledgee to testify carelessly and recklessly in a suit based upon a collateral security note held by him in pledge.

It is negligence on the part of a pledgee to omit to use all reasonable means to make such suit successful.

Due diligence means a course of legal proceedings according to the rules and principles established in our systems of jurisprudence for the protection and enforcement of private rights. Pennoyer v. Neff, 5 Otto (U. S.), 733.

Due diligence means all ordinary legal measures prosecuted in good faith. Thomas v. Woods, 4 Cowen (N. Y.), 182.

Negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty to the injury of another. Nicholson v. Erie, 41 N. Y. 529.

It is the duty of a pledgee of negotiable paper in prosecuting a suit to enforce collection thereof; to preserve exceptions to errors occurring at the trial; to prepare the way and to pray an appeal, or sue out a writ of error against an adverse judgment. The grossest mismanagement after all is found in the failure to appeal from the judgment itself. It is negligence in an attorney to neglect to prosecute a motion for a new trial. It was inexcusable to permit the time for appeal to pass by. Drais v. Hogan, 50 Cal. 121.

An attorney in an action in which an erroneous judgment has been rendered against his client may sue out a writ of error for the reversal of such judgment without special authority, and it is his duty to do so. Grosvenor v. Danforth, 16 Mass. 73.

An attorney may recognize and bind his client to prosecute an appeal without further authority. Adams v. Robinson, 1 Pick. (Mass.), 461.

The pledgee of commercial paper held in pledge, is a trustee for the owner; he is bound to hold and collect the same as it becomes due, and apply the proceeds to the payment of the debt so secured. Joliet v. Scioto, 82 Ill. 549.

The purpose of collateral securities is to place in the hands of the pledgee the means of reimbursement if default occurs. The contract of pledge carries with it the implication that the collateral security shall be made effectual to discharge the debt. Colebrooke on C. S., Sec. 85, 1883 Ed.

It is the duty of the pledgee to proceed by action to collect the whole face value of the security. Colebrooke on C. S., Sec. 90, 1883 Ed.

"Where the pledge is a negotiable security it is the duty of the pledgee to use all due diligence to collect such notes, or he will be liable." Hanna v. Holton, 78 Pa. 334; Lamberton v. Windom, 12 Minn. 232; Story on Bailment, Secs. 321, 351, 8th Ed.

The diligence required of a pledgee of negotiable paper is the same as that required of an agent or attorney employed to collect the demand. Jones on Pledges, Sec. 692; Buckinham v. Payne, 36 Barb. (N. Y.) 81; Godefroy v. Jay, 7 Bing. (Eng.) 413; Stevens v. Walker, 55 Ill. 151; Walker v. Stevens, 79 Ill. 193; Dearborn v. Dearborn, 15 Mass. 316; Lawrence v. McCalmont, 2 How. (U. S.) 427.

A pledgee having received negotiable paper to secure a debt evidenced by a separate note, can not maintain an action to enforce payment of the pledged paper unless he also owns the debt secured by the pledge. The separation of debt and security therefor is contrary to the usual course of business. Ware v. Russell, 57 Ala. 43; Van Eman v. Stanchfield, 13 Minn. 76; Waddle v. Owen, 43 Neb. 489; 61 N. W. Rep. 731; Ocean Bank v. Fant, 50 N. Y. 474; Jones on Pledges, Sec. 419, 1883 Ed.; Colebrooke on Coll., Sec. 79, 1883 Ed.; Craig v. Parkis, 40 N. Y. 181; Lucas v. Harris, 20 Ill. 165; Dicey on Parties, 499, Rule 114; Spencer v. Field, 10 Wend. 93; Sailly v. Cleveland, 10 Wend. 159; Tiedeman on Com. Paper, 1889 Ed., Sec. 304; Moore v. Maple, 25 Ill. 341; Steere v. Benson, 2 Ill. App. 560.

A privy to a judgment is a person who subsequently thereto has succeeded to the rights formerly held by another in property affected by the judgment. Freeman on Judgments, Secs. 162, 181; 12 Am. & Eng. Ency. 93.

"By privies, within the meaning of the rule, are meant heirs, executors, administrators, terre tenants, or those having an interest in remainder or reversion, or one who is made a party by law." 7 Ency. of Pl. & Pr., 857. McCormick v. Fulton, 19 Ill. 570; Rorke v. Goldstein, 86 Ill. 568; Northrup v. McGee, 20 Ill. App. 108; 12 Am. & Eng. Ency. of Law, p. 97.

In an action by a creditor to recover upon a debt secured by negotiable paper pledged as collateral, it is incumbent on such creditor to produce such pledged paper at the trial, or show why it is not produced. Funkhouser v. Wagner, 62 Ill. 59.

"Where a pledge is lost or destroyed, it is at an end like any other bailment; but the pledgee can not recover the debt for which it was security, without showing that the loss was not attributable to his fault." Lawson on Bailment, 1895, Secs. 70, 332; Stearns v. Marsh, 4 Denio (N. Y.), 227.

The law presumes that a negotiable promissory note was founded upon a valid consideration and such presumption can only be overcome by a preponderance of legal evidence. Union Trust Co. v. Rigdon, 93 Ill. 458; Kerney v. Gardner, 27 Ill. 163; Shelden v. Harding, 44 Ill. 71; Thompson v. Shoemaker, 68 Ill. 256; Ruff v. Jarrett, 94 Ill. 475; Miller v. Larned, 103 Ill. 570; Padfield v. Padfield, 68 Ill. 210; Comstock v. Hannah, 76 Ill. 535.

When pledged securities are lost or destroyed while in the possession of the bailee the burden is on him to show the exercise by him of due care and diligence according to the nature of the bailment. Shearman and Redfield on Negligence (1880, 3d Ed.), Sec. 13; Thomas on Negligence, 68; Funkhouser v. Wagner, 62 Ill. 59; Shearman and Redfield (1880), Secs. 220, 245; Ouderkirk v. C. N. Bank, 119 N. Y. 263; Semple v. Detwiler, 30 Kan. 399; Reed v. Darlington, 19 Iowa, 349.

HAMILTON & HAMILTON and GEORGE W. HERDMAN, attorneys for appellee.

The judgment of the Supreme Court of New Jersey, in

the suit of Andrew W. Cross v. The Executors of the Estate of Mary D'Arcy, deceased, upon the $5,600 note of Mary D'Arcy, is conclusive, not only upon Cross, who was indorsee and plaintiff in the suit, but also upon P. D. Cheney, who was payee and indorser of said note, and who was a privy to said suit. Black on Judgments, Vol. 2, Sec. 506, 829; Shinn, Pleading, Vol. 2, Sec. 987; Arenz v. Reihle, 1 Scam. 340; Horton v. Critchfield, 18 Ill. 133; Baker v. Palmer, 83 Ill. 568; Roth v. Roth, 104 Ill. 35; Leslie v. Bonte, 130 Ill. 501.

There is a privity between Cheney as indorser and Cross as indorsee of the Mary D'Arcy $5,600 note. Dan. Neg. Ins., Vol. 1, Sec. 174, and note 2 (4th Ed.).

The Mary D'Arcy note of $5,600, as a cause of action, became and was completely merged in the judgment rendered by the Supreme Court of New Jersey, not only as to Cross, indorsee and plaintiff, but also as to Cheney, payee and indorser thereof, and privy to said judgment, where the issue was want of consideration. Leslie v. Bonte et al., 130 Ill. 501; 2 Black on Judgments, Sec. 555.

Whatever reasonable expense is necessarily incurred by the pledgee in keeping and caring for the property pledged, and protecting it against liens and taxes and assessments, and asserting title to it or rendering it available, is a fair charge against the property. Furness v. Union Nat. Bank, 147 Ill. 575; Furness v. Union Nat. Bank, 46 Ill. App. 525; Farwell v. Johnston, 57 Ill. App. 110.

A reasonable attorney's fee may be allowed. Jones on Pledges, Sec. 680.

Cheney, the appellant, advised, directed and furnished money to pay attorney's fees and costs in the suit on the Mary D'Arcy note in the Supreme Court of New Jersey, and he is bound by the judgment in that suit to the same extent as Cross, appellee, although said Cheney was not a party to the suit of record. 2 Black on Judgments, Secs. 540, 574; Freeman on Judgments, Secs. 187, 188, 174, 175; Bennitt v. Star Mining Co., 119 Ill. 14; Patton v. Smith, 113 Ill. 499; Cheney v. Patton, 134 Ill. 422; Cheney v. Patton, 144 Ill. 373.

The suit on the Mary D'Arcy note was rightfully brought in the Supreme Court of New Jersey, in the name of Cross as plaintiff, who had the legal title to said note as indorsee of Cheney, notwithstanding the principal note for which the D'Arcy note was held as collateral, had been assigned to the bank. The executors of Mary D'Arcy, who were defendants in the New Jersey suit, could not contest the right of Cross to maintain said suit as plaintiff. Caldwell v. Lawrence, 84 Ill. 161; Lohman v. Cass County Bank, 87 Ill. 616; Rothschild v. Bruschke, 33 Ill. App. 283; Forster v. Second National Bank, 61 Ill. App. 272.

This cause having been tried by the court without a jury, the same force and effect will be given to the finding and judgment of the court as would be given to the verdict of a jury, and judgment thereon. Clark v. Scanlon, 33 Ill. App. 48; Armstrong v. Barrett, 46 Ill. App. 193; Walsh v. Dunn, 34 Ill. App. 152; Field v. C. & R. I. R. R. Co., 71 Ill. 459; Cribben, Sexton & Co. v. Hicks, 72 Ill. App. 447.

When substantial justice has been done, the judgment of the court below will be affirmed. C., C., C. & St. L. Ry. Co. v. Hall, 72 Ill. App. 448; New England F. & M. Ins. Co. v. Wetmore, 32 Ill. 221; Curtis v. Sage, 35 Ill. 22; Beseler v. Stephani, 71 Ill. 400.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit by Andrew Cross as plaintiff, against Prentiss D. Cheney as defendant, commenced and prosecuted to judgment in the Circuit Court of Jersey County. The trial was before the court without a jury, by consent, and resulted in a finding and judgment in favor of the plaintiff for $7,242.60 and costs. The defendant brings the case to this court by appeal and urges us to reverse the judgment for the following reasons :

(1) The court erred in sustaining plaintiff's demurrer to counts one, two and six of defendant's second amended plea of set-off.

(2) The court erred in overruling defendant's motion for judgment upon the pleadings.

(3)   The finding of the court is against the evidence.

(4)   The judgment is against the law of the case, and

(5)   The damages assessed are excessive.

The declaration sets out in the first count the execution and delivery of a promissory note by the defendant to the plaintiff for $5,000, dated April 29, 1891, payable July 14, 1891, with interest after maturity at the rate of eight per cent per annum, and if not paid when due, and the note is placed in the hands of an attorney to collect, then to pay ten per cent on the amount due thereon, in addition, as an attorney's fee, to be recovered as part of the note, or by separate suit; a failure to pay the same; and claims damages therefor; and also has added the appropriate common counts.

The defendant pleaded the general issue, and by amendments, what is called in this record the "defendant's second amended special plea of set-off," with six counts, in which the defendant admitted the execution and delivery by him to the plaintiff of the note sued on, and set up as a defense thereto, that the defendant also gave to the plaintiff a note of Mary D'Arcy, which is as follows:

"$5,600.              MORRISTOWN, N. J., May 9th, 1885.

On or before five years after date, for value received, I promise to pay to the order of P. D. Cheney, five thousand six hundred dollars, with six per cent per annum interest from date until paid.

                                        MARY D'ARCY.

Indorsed:   Pay to Andrew W. Cross, or order.

                                        P. D. CHENEY."

The same to be held by the plaintiff as a collateral security for the payment of the note sued on, which he calls the "principal note," and avers that the "collateral note" was a valid and binding obligation against the maker thereof; that the maker was solvent and able to pay the same in her lifetime, and when she afterward died, left an estate in New Jersey, where she lived and died, which was amply sufficient to pay said note, but that the plaintiff had negligently failed and refused to collect the collateral note both in the lifetime of the maker and after her death, until the

collection thereof had become barred by the statute of limitations of the State of New Jersey; whereby the collateral note had been wholly lost to the defendant; wherefore an action hath accrued to the defendant, to demand of and from the plaintiff the amount due on the collateral note; and defendant asks that the whole amount due on the collateral note be set off to defendant against the amount due the plaintiff on the principal note sued on.

This special plea of set-off has also added to it appropriate common counts, which would justify the setting off against the amount claimed in the declaration, any demand which the defendant had against the plaintiff when this suit was commenced.

To defendant's plea of set-off the plaintiff replied, by way of replication thereto, that on February 12, 1894, plaintiff being then the legal holder of the Mary D'Arcy note for $5,600, instituted in his name a suit in the Supreme Court of New Jersey, against the executor of the will of said Mary D'Arcy, as she lived in New Jersey and had died there testate; that the executor, as defendant thereon, filed a plea of the general issue and a plea of the statute of limitations, upon which pleas issue was joined by the plaintiff; that in response to demand of plaintiff's attorney in the New Jersey suit, the executor filed in that court in that suit a specification of the defenses that would be made under said plea of the general issue, which specification was as follows:

First. That the Mary D'Arcy note sued on in that case was founded upon no consideration and was and is not binding upon Mary D'Arcy nor her executors.

Second. That the plaintiff is not a *bona fide* holder of the Mary D'Arcy note for value, and without notice of the want of consideration; and that the plaintiff is not entitled to recover thereon.

Third. That if the plaintiff is entitled to recover any sum of money on the Mary D'Arcy note sued on in that case, he can not recover more than the amount actually advanced by him before the maturity of said note, in good faith, without notice of the want of consideration of said note;

that under the statute of New Jersey, the executor aforesaid, as defendant in said suit, was confined to the defense contained in said specification; that the plaintiff did prosecute the suit in New Jersey, with due care and diligence, so that on May 4, 1897, it came on for trial in said court, before a jury who rendered a verdict in favor of the executor, upon which that court rendered judgment against the plaintiff in bar of the action, and for costs; that the defendant, Cheney, had notice and was advised of the commencement of the suit in New Jersey, and all the proceedings therein; and that there was no negligence or want of care and diligence on the part of the plaintiff in handling said note, or in the institution, prosecution, or trial of the suit in New Jersey, or in permitting the rendition of the judgment therein.

To this replication the defendant filed a rejoinder in which he admitted that the plaintiff commenced the suit on the D'Arcy note against the executor of her estate, in New Jersey, and the same terminated in a verdict and judgment as stated in the replication, but denied that the plaintiff prosecuted the suit with the diligence alleged, but on the contrary he negligently and carelessly conducted himself with reference to the collection of the Mary D'Arcy note, and in the prosecution of the suit thereon; that the verdict and judgment therein was on that account adverse to him; and further denies that he had notice of the suit in New Jersey, and of all the proceedings therein, and advised and directed the plaintiff and his attorney in commencing and conducting same from its commencement until its termination, as alleged in the replication, but says that on the contrary, the plaintiff and his attorney, of their own accord, independent of, and without regard to any advice of the defendant, commenced and managed said suit to its end, with the result stated; and concludes to the country.

Issues were joined upon this rejoinder and on the plea of general issue, and a replication was filed traversing the facts set out in the common counts in the plea of set-off, and issue properly joined thereon.

On the hearing before the court without a jury, by consent, evidence was heard, from which it appears that by Sec. 116, p. 2552, Gen. Statutes (1895), New Jersey, that the plaintiff had the right to demand of the executor in the suit on the D'Arcy note, to file therein the specification of the defenses he intended to make to the note sued on, under his plea of general issue, and when filed to confine him in such defense to the defenses set forth in such stipulation; and that he did file the stipulation of his defenses therein as averred in plaintiff's replication; that the defendant herein had notice of, advised and directed the plaintiff and his attorney to commence and how to manage the suit in New Jersey from its commencement to its completion; that the suit was commenced February 12, 1894, in the name of the plaintiff after the defendant (Cheney) had given the attorney of Cross the facts as to how Cross was holding the note, and advised it to be so commenced.

And it also shows that the D'Arcy note is dated May 9, 1885, and by its terms was due on May 9, 1890; that the principal note sued on was given April 9, 1891, so that it appears that the D'Arcy collateral note was overdue at the time the principal note sued on in this case was given.

The defendant, Cross, testified as a witness in this suit, that he paid as costs and reasonable attorney's fees in the New Jersey suit, the sum of $1,050, and that the defendant herein (Cheney) had reimbursed him therefor to the amount of $750, and that he received back from the clerk of the court in New Jersey, where said suit was tried, $58.70 of $100 that he deposited to secure costs therein; and that his expenses in attending as a witness, etc., in that suit, were $157.10. These amounts with the principal and interest of the note sued on, and the attorney's fees provided therein to be paid in case the note was sued on, foot up the amount of the judgment rendered by the Circuit Court in this case.

While it is true that the defendant (Cheney) in his testimony denied knowledge of the fact that Cross had transferred the D'Arcy note to the Bank, nevertheless, we think that even if he did not know that fact, yet it was fully

established by the evidence that that fact did not defeat a recovery on the D'Arcy note, but such recovery was defeated solely on the ground that there was no consideration given for this note.

We also think, from a fair consideration of all the evidence, that the appellant (Cheney) did so advise, manage and assist in the suit in New Jersey, and his interest was such in the collection of the money due on the D'Arcy note, that he is as completely bound by the result reached in the New Jersey suit, as was the appellee, Cross, and therefore, under the doctrine announced in the case of Cheney v. Patton, 144 Ill. 373, and cases therein cited, he is effectually bound thereby.

As to the claims made by counsel for the appellant, that the Circuit Court erred in sustaining plaintiff's demurrer to "counts one, two and six of defendant's second amended plea of set-off;" that the Circuit Court erred in overruling defendant's motion for judgment upon the pleadings; and the finding of that court was against the evidence, we will say that the record discloses that the defendant could and did make all the proofs and defense under his pleadings, which the court sustained, that he could have made if the demurrer had been overruled as to those counts; that as the pleadings stood when his motion for judgment on the pleadings was made, he was not entitled to have it allowed; and the evidence justified the damages assessed.

So that on this record we are unable to find that the Circuit Court committed any of the errors urged by counsel for the appellant, to reverse its judgment, hence we affirm it.